IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED
2017 AUG 28 P 1: 13
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| **RICHARD A. YEAGER and DEANA J. YEAGER,** | ) ) ) |
| **Plaintiffs,** | ) ) ) |
| v. | ) Case No. 1:17-CV-574-CSC ) |
| **OCWEN LOAN SERVICING, LLC,** | ) ) **JURY TRIAL DEMANDED** |
| **Defendant.** | ) |

## COMPLAINT

Plaintiffs, RICHARD A. YEAGER and DEANA J. YEAGER ("Plaintiffs") file this lawsuit for damages, and other legal and equitable remedies, resulting from the illegal actions of OCWEN LOAN SERVICING, LLC ("Ocwen"), in negligently, knowingly, and/or willfully contacting Plaintiffs on Plaintiffs' landline and cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"). In addition, Plaintiffs seek damages related to Ocwen's shoddy mortgage loan servicing practices.

## INTRODUCTION

1. This matter presents, in addition to telephone harassment claims, a classic case in which errors made by prior mortgage servicers were never properly corrected. Instead the errors were passed on to consecutive servicers causing borrowers headaches such as: lowering their credit scores, collection of amounts that were discharged in bankruptcy, improper interest charges and improper late charges.

## JURISDICTION AND VENUE

2. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331 as Plaintiffs' claims arise under the laws of the United States.

1

3. This Court also has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

4. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. Ocwen conducts business in Alabama.

6. Venue and personal jurisdiction in this District are proper because Ocwen transacts business in this District, and a material portion of the events at issue occurred in this District.

7. The statute of limitations is tolled as to Plaintiffs' TCPA and FDCPA claims, due to the commencement of a nationwide class action, based on same or similar allegations, filed against Ocwen on October 27, 2014 in the Northern District of Illinois, Case Number 1:14-cv-08461. See *American Pipe & Construction Co v. State of Utah*, 414 U.S. 538.

## PARTIES

8. Plaintiffs are residents of Webb, Houston County, Alabama.

9. Ocwen is a limited liability company based in West Palm Beach, Florida.

## FACTUAL ALLEGATIONS

10. On or about February 24th, 1998, Plaintiffs obtained a loan from Ameriquest Mortgage Co., in the amount of $38,350.00.

11. The loan was secured by their principal residence.

12. Initially the loan was serviced by AMC Mortgage Services, Inc.

13. Due to a financial setback, Plaintiffs filed for relief under Chapter 13 of Title 11 U.S. Code on June 4, 2003.

14.     The Chapter 13 plan of the Plaintiffs was subsequently confirmed by order of the Bankruptcy Court on August 26, 2003.

15.     The Chapter 13 plan, as confirmed, included a debt owed to Ameriquest Mortgage Company aka AMC Mortgage Services, Inc., ("AMC") in the amount of $44,620.00, which was scheduled as a claim secured by a first mortgage on the residential real estate of the Plaintiff at 871 Furnie Folkes Road, Webb, Alabama 36376.

16.     The plan provided for an arrearage amount of $3,500.00 to be paid through the bankruptcy case allowing for 6% interest and a specified payment of $106.00. Further, the plan provided for the Plaintiffs to make direct payments on the mortgage commencing with their July 2003 payment, which they did.

17.     AMC, however, filed a sworn proof of claim related to the mortgage loan in the amount of $8,444.98 for the arrearage.

18.     The Yeager's, through their bankruptcy counsel, sent AMC a Qualified Written Request, ("QWR") under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act (12 U.S.C. § 2605(e)), requesting correction of the account and a transaction history for the loan secured by the first mortgage.

19.     AMC did not correct the account and the transaction history indicated that $2,044.69 had been added to the Yeagers' mortgage balance in violation of Rule 2016 of the Bankruptcy Rules of Procedure and 11 U.S.C. §506.

20.     The Yeagers then filed Adversary Proceeding No. 06-01102 in the Bankruptcy Court for the Middle District of Alabama, seeking redress.

21.     The Adversary Proceeding was settled and the settlement was approved by the bankruptcy court on March 22, 2007. Under the settlement, AMC agreed to waive $2,125.11

3

remaining on its $8,444.98 arrearage claim in the bankruptcy case and to amend its proof of claim to reduce its arrearage claim to $6,319.87.

22. The Yeagers made all their payments, completed their Chapter 13 plan and received a discharge November 1, 2007. At that time, their mortgage loan was current.

23. Early in 2008 Citi Residential Lending assumed servicing of the Yeagers' loan and, despite the finding of the bankruptcy court approving the settlement and its Chapter 13 Discharge Order, immediately started harassing the Yeagers claiming they were in default.

24. The Yeagers sent proof that all their payments had been made but never received confirmation from Citi Residential Lending that the error had been corrected.

25. In March of 2010, servicing of the loan was transferred to American Home Mortgage Servicing Inc. ("AHMSI"). Much like Citi Residential Lending, AHMSI claimed the account was in default and the Yeagers, again, send proof of all payments.

26. On information and belief AHMSI changed its name to Homeward Residential, Inc., on or about January of 2012 and was purchased by Ocwen in late 2012.

27. Servicing of the Yeagers' loan was eventually transferred to the defendant Ocwen on or about March 15, 2013.

28. At the time of the servicing transfer Plaintiffs' loan was considered, and treated by Ocwen, as if it were in default.

29. For example, soon after it assumed servicing of the loan Ocwen began a campaign of telephone harassment claiming that the loan was in default and demanding payment of amounts that were not owed.

30. In response, the Yeagers sent Ocwen a letter setting out the history of the loan and asking Ocwen to correct their account. The letter also requested that Ocwen stop calling.

31. Within four (4) years of Plaintiffs filing this Complaint, Ocwen called Plaintiffs' cellular telephone xxx-xxx-8678 and landline phone xxx-xxx-9756 to collect on Plaintiffs' alleged debt.

32. All of the telephone calls Ocwen made to Plaintiffs were an attempt to collect on Plaintiffs' alleged debt.

33. At all relevant times, Plaintiffs' landline telephone was listed on the FTC's "do not call" list.

34. None of the calls Ocwen made to Plaintiffs were for an emergency purpose.

35. Within four (4) years of Plaintiffs filing this Complaint, Ocwen called Plaintiffs' cellular telephones and landline phone hundreds of times from the following telephone number: 800-746-2936 using an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), with an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

36. Occasionally Ocwen called Plaintiffs land line and cellular telephones from a number or numbers that were "blocked" and Plaintiffs could not determine the number.

37. The alleged arrearage Ocwen was attempting to collect was paid, discharged or otherwise compromised during the Yeagers' Chapter 13 case.

38. The following telephone number is Ocwen's phone number: 800-746-2936.

39. On or about April 2013, Plaintiffs requested Ocwen to stop calling Plaintiffs' cellular and landline telephones.

40. Despite Plaintiffs' repeated requests to stop, Ocwen continued to call Plaintiffs' cellular and landline telephones.

41. During April 2013, Plaintiffs mailed Ocwen a letter requesting Ocwen stop calling Plaintiffs' cellular and landline telephones.

42. The letter also detailed the history of the account, explained that the Yeagers were not in default, requested that their account be corrected. The letter requested, as well, that any negative credit reporting of the status of the account to Credit Reporting Agencies ("CRAs") be corrected.

43. Despite receiving the letter Ocwen continued relentlessly calling Plaintiffs' cellular and landline telephones using an ADTS.

44. Moreover, Ocwen failed to correct the account and continues to report to CRAs that the account is in default.

45. Prior to calling Plaintiffs' cellular and landline telephones, Ocwen knew the numbers were cellular and landline telephone numbers.

46. All of the calls Ocwen made to Plaintiffs' cellular telephones resulted in Plaintiffs incurring a charge for incoming calls.

47. During more than one conversation, Ocwen learned that Plaintiffs wanted Ocwen to stop calling Plaintiffs' cellular telephones.

48. Even if, at one point, Ocwen had permission to call Plaintiffs' cellular and landline telephones, Plaintiffs revoked this consent.

49. Ocwen continued to call Plaintiffs' cellular and landline telephones after Ocwen knew Plaintiffs wanted the calls to stop.

50. Within 4 years of Plaintiffs filing this Complaint, Ocwen used an automatic telephone dialing system to call Plaintiffs' cellular and landline telephones.

51. Within 4 years of Plaintiffs filing this Complaint, Ocwen called Plaintiffs' cellular and landline telephones in predictive mode.

52. Within 4 years of Plaintiffs filing this Complaint, Ocwen left pre-recorded voicemail messages for Plaintiffs on Plaintiffs' cellular and landline telephones.

53. Within 4 years of Plaintiffs filing this Complaint, Ocwen left automatic voicemail messages and messages from live operators for Plaintiffs on Plaintiffs' cellular and landline telephones. Moreover, the statute of limitations has been stayed by the pendency of one or more class actions bring the same or similar TCPA and FDCPA claims against Ocwen. For example, see *Snyder v Ocwen Loan Servicing, LLC.*, Case: 1:14-cv-08461, Northern District of Illinois Eastern Division.

54. The telephone dialer system Ocwen used to call Plaintiffs' cellular and landline telephones has the capacity to store telephone numbers.

55. The telephone dialer system Ocwen used to call Plaintiffs' cellular and landlines telephones has the capacity to call stored telephone numbers automatically.

56. The telephone dialer system Ocwen used to call Plaintiffs' cellular and landline telephones has the capacity to call stored telephone numbers without human intervention.

57. The telephone dialer system Ocwen used to call Plaintiffs' cellular and landline telephones has the capacity to call telephone numbers in sequential order.

58. The telephone dialer system Ocwen used to call Plaintiffs' cellular and landline telephones has the capacity to call telephone numbers randomly.

59. The telephone dialer system Ocwen used to call Plaintiffs' cellular and landline telephones selects telephone numbers to be called according to a protocol or strategy entered by Ocwen.

60. The telephone dialer system Ocwen used to call Plaintiffs' cellular and landline telephones simultaneously calls multiple consumers.

61. While Ocwen called Plaintiffs' cellular and landline telephones, Plaintiffs' cellular and landline telephone lines were unavailable for legitimate use during the unwanted calls.

62. The Yeagers have on numerous occasions requested, in writing, that Ocwen correct the application of their payments. Each of these requests constituted a Qualified Written Request ("QWR") as defined by 12 U.S.C. § 2605(e). At least one of these QWRs was sent to Ocwen less than three years prior to the filing of this action.

63. To date, Ocwen has failed to correct the account and continues to threaten foreclosure.

64. Paragraph three of the Yeagers' mortgage states:

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note: second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

65. Ocwen has failed and continues failing to properly apply Plaintiffs' payments pursuant to the terms of the note and mortgage.

66. For each of the payments Ocwen claims was late, it has improperly charged additional interest, late fees and other fees.

## COUNT ONE
## TELEPHONE CONSUMER PROTECTION ACT

67. Ocwen's conduct violated the TCPA by:

    a. Placing hundreds of non-emergency telephone calls to Plaintiffs' cellular and landline telephones using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiffs, RICHARD A. YEAGER and DEANA J. YEAGER, respectfully request judgment be entered against Ocwen, OCWEN LOAN SERVICING, LLC for the following:

a. $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B);

b. As a result of Ocwen's willful and/or knowing violations of 47 U.S.C. 227(b)(1), $1,500.00, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) and 47 U.S.C. 227(b)(3)(C);

c. Injunctive relief prohibiting such conduct in the future; and

d. Any other relief that this Honorable Court deems appropriate.

## INVASION OF PRIVACY

68. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set out herein.

69. The actions taken by Ocwen in repeatedly calling Plaintiffs' landline and cellular phone constitute a wrongful invasion of Plaintiffs' privacy. Ocwen's actions caused wrongful intrusion upon Plaintiffs which has disrupted and harmed Plaintiffs in such a manner as to cause outrage, mental suffering, shame and humiliation to any person with ordinary sensibilities.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Ocwen for invasion of privacy and award Plaintiffs compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiffs further request such other relief as the Court deems just and proper, the premises considered.

## COUNT THREE
## RESPA SERVICING VIOLATIONS

70. Plaintiffs realleges and incorporate all of the preceding paragraphs as if fully set out herein.

71. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of their loan. That provision also grants borrowers the right to submit a notice of servicing error ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e).

72. A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. *Id.*

73. Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau recently exercised its authority under RESPA and clarified the borrower's rights to have errors corrected. 12 C.F.R. § 1024.35.

74. Under Section 2605(e) and the implementing regulations ("Reg. X"), including the recent amendments thereto which servicers must take the following actions upon receipt of a QWR and/or NOE:

➢ Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;

➢ Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide the borrower with written explanation of the corrections made, the effective date of the correction and contact information for further assistance;

10

➢ If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for the servicer's belief that the account is being serviced correctly or a description of the changes made; and

➢ If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

75. In addition to these requirements, RESPA was amended in 2010 to add additional "servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

➢ Obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance. 12 U.S.C. § 2605(k)(A);

➢ Charge fees for responding to valid qualified written requests or notices of servicing errors. 12 U.S.C. § 2605(k)(B);

➢ Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);

➢ Fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan. 12 U.S.C. § 2605(k)(D); or

11

➢ Fail to comply with any other obligation imposed under the implementing regulations. 12 U.S.C. § 2605(k)(E) 12 U.S.C. § 2605(k).

76. Plaintiffs' mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

77. On numerous occasions Plaintiffs sent letters and supporting asking that their account be corrected. Each of these letters constituted a "qualified written request" and a "notice of servicing error" within the meaning of 12 U.S.C. § 2605(e) and Reg. X.

78. Ocwen has engaged in a pattern and practice of failing to properly investigate and correct Plaintiffs' mortgage account.

79. The Yeagers have requested, in writing, that their account be corrected on at least the following occasions:

➢ March 27, 2015

➢ March 18, 2014

➢ January 7, 2014

➢ September 7, 2013

➢ April 16, 2013.

80. Ocwen has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWR and NOE as required under that section and Reg. X. Specifically, Ocwen failed to conduct any reasonable investigation of the errors described in Plaintiffs' letters and failed to refund monies wrongfully collected.

81. Ocwen has also violated 12 U.S.C. § 2605(k) in at least the following ways:

➢ Failing to take timely action to respond to Plaintiff's notice of servicing error; and

12

> ➤ Failing to comply with the requirements set out in Reg regarding responding to a QWR and a NOE.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Ocwen for violation of the RESPA, awarding the following relief:

a. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

b. Reasonable attorney's fees, and costs expended in this proceeding; and

c. Such other and further relief as the Court may deem just and proper.

## COUNT FOUR
## FDCPA

82. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set out herein.

83. Within one year preceding the filing of this complaint Ocwen has sent statements to Plaintiffs' falsely claiming that their account was in arrears.

84. Each of these statements constitute an attempt to collect amounts, that were not owing or had been compromised or discharged in bankruptcy, in violation of the FDCPA.

85. Each of these statements constitute a false and misleading statement regarding the status of the Yeagers account.

86. Finally, using illegal conduct to collect a consumer debt, including placing calls in violation of the TCPA, is unfair and unconscionable and therefore violates the FDCPA, including but not limited to 15 U.S.C. § 1692f.

Wherefore, the Yeagers demand, actual damages, statutory damages and attorney's fees as provided by for 15 U.S.C. 1692k.

## COUNT FIVE
## BREACH OF MORTGAGE AND NOTE

87. The allegations of this Complaint are hereby re-alleged and incorporated by reference.

88. Ocwen has failed to apply, calculate and collect payments as required under the mortgage and note executed by Plaintiff.

89. Plaintiff has suffered damage as a proximate result of the said breach.

WHEREFORE, Plaintiffs request that this Court enter judgment against Ocwen for breach of the mortgage and award them compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

RESPECTFULLY SUBMITTED,

DATED: August 24, 2017

By: _____
Earl P. Underwood, Jr.
Underwood & Riemer, P.C.
21 South Section Street
Fairhope, Alabama 36532
Telephone:   251-990-5558
Facsimile:    251-990-0626
epunderwood@alalaw.com
*Attorney for Richard A. and Diana J. Yeager*

Plaintiffs Demand a Trial by Jury

_____
Earl P. Underwood, Jr.